FILED

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### Southern Division

97 JUN 12 PM 3: 22
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| LARRY BRYANT, ) | |
|    Plaintiff(s); ) | |
| ) | |
| -vs.- ) | No. CV-95-P-1164-S |
| ) | |
| UNITED STATES PIPE & FOUNDRY ) | |
| COMPANY, ) | |
|    Defendant(s). ) | |

ENTERED

JUN 12 1997

## OPINION

The defendant, United States Pipe & Foundry Company ("U.S. Pipe") filed a Motion for Summary Judgment, which was considered at a prior motion docket. For the following reasons, this motion is due to be granted.

### Facts[1]

The plaintiff, Larry Bryant, began his employment with U.S. Pipe in May, 1992. At the time of the events leading to his discharge, Bryant was working as an overhead crane operator in the Mechanical Maintenance Department. Approximately four weeks prior to his discharge, Bryant "bumped" a white employee, Clarence J. Lawrence, out of the crane operator position pursuant to the collective bargaining agreement. Lawrence was assigned to a job at a reduced hourly rate of pay.

U.S. Pipe has a policy that prohibits employees from sleeping while on duty. Since October, 1990, U.S. Pipe has strictly enforced plant rules. U.S. Pipe met with union

---

[1] The recitation of "facts" is based upon the presented materials viewed in the light most favorable to the plaintiff.

representatives and posted a notice to all employees informing them of the strict enforcement policy. Since October, 1990, U.S. Pipe had fired all employees found to be sleeping while on duty. Will Bates, an African-American foreman, testified that he understood that an employee could not be terminated for sleeping while on duty unless a supervisor saw the employee sleeping.

On January 31, 1994, Bryant reported to work at 6:00 p.m. to begin a twelve hour shift. Between 10:30 and 11:00 p.m., the ground employee working with Bryant asked a white supervisor, James Eppison, to check on Bryant because he could not get Bryant's attention. Eppison went to Bryant's work station, where he noticed that the block attached to Bryant's crane was on the floor and the cable was unwinding. He also observed Bryant slumped forward in the crane's cab, with his head leaning on the windshield and his shoulder against the crane's controls. Eppison tried to get Bryant's attention by yelling at him, shaking the crane cables, and shining a flashlight at him. Eppison eventually attracted Bryant's attention by throwing a block of wood at the cab. Eppison then used hand signals to direct Bryant to bring the crane block up off the ground. Bryant then took the crane to the rear of the building, climbed down a ladder, and met with Eppison.

Eppison met with Bryant and consulted his supervisors, and Bryant was asked to consent to a drug and alcohol test. Bryant consented to the test, the test was negative, and Bryant returned to finish the shift. The following morning, Bryant met with the plant's Personnel Director, Benny Smith, and denied having been asleep. On February 4, 1994, Bates told Smith that Bryant had told him that he might have "nodded off" or "nodded out" while operating the crane. On February 7, 1994, Smith met with Bryant who again denied having fallen asleep. Smith concluded that Bryant was asleep while operating the crane. Bryant was terminated for sleeping while on duty.

On May 8, 1995, Bryant filed a complaint alleging discrimination on the basis of race in discipline, discharge, and other adverse terms and conditions of employment.

## Analysis

Under Title VII and 42 U.S.C. § 1981, a plaintiff must make a prima facie showing of racial discrimination. To state a prima facie case regarding termination, the plaintiff must show that (a) he is a member of a protected class (in this case a racial minority); (b) he was qualified for the position; (c) he was terminated; (d) he was replaced by someone outside the protected class.[2] Where the plaintiff complains of disparate treatment regarding disciplinary action, he can establish a prima facie case if he can show that an action was taken against him but not against one outside his class who is similarly situated for violating the same work rule.[3] If the plaintiff makes this prima facie showing, the burden shifts to the defendant to articulate a legitimate non-discriminatory reason for its actions.[4]

In this case, Bryant argues that he should be required to state a prima facie case under the termination standard rather than the discipline standard, because he concedes that he can point to no other employee that was not discharged when it was determined that he was asleep on the job. Assuming that Bryant has established a prima facie case, U.S. Pipe has articulated a legitimate, non-discriminatory reason for Bryant's termination. U.S. Pipe believed that Bryant was asleep on the job, and fired him for that reason. Bryant cannot point to any evidence that would

---

2. *See McDonnell Douglas v. Green*, 411 U.S. 792 (1973); *Coutu v. Martin County Board of Education*, 47 F.3d 1068, 1073 (11th Cir. 1995).

3. *See Davin v. Delta Air Lines, Inc.*, 678 F.2d 567, 570 (5th Cir. 1982).

4. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981).

demonstrate that U.S. Pipe's reason was a pretext for discrimination. Therefore, U.S. Pipe's Motion for Summary Judgment is due to be granted.

Dated: June 11, 1997

Chief Judge Sam C. Pointer, Jr.

Service List:
    Mr. Gregory Wiggins
    Mr. Michael Quinn
    Mr. James P. Alexander
    Mr. Abdul K. Kallon

4